IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14-cv-01075-W-DGK |
| | ) | |
| MAIN HOOKAH LOUNGE, LLC, | ) | |
| d/b/a MAIN HOOKAH LOUNGE | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING DEFAULT JUDGMENT

This is a pay-per-view piracy case. Plaintiff J & J Sports Productions, Inc. ("Plaintiff") alleges that Defendant Main Hookah Lounge, LLC ("Defendant") unlawfully intercepted and exhibited a prizefight telecast without paying Plaintiff any licensing fees. Plaintiff has sued Defendant on three counts. Count I is for violating 47 U.S.C. § 605(a), Unauthorized Publication or Use of Communications; Count II is for violating 47 U.S.C. § 553, Unauthorized Reception of Cable Service; and Count III is the common law claim of conversion. Defendant has failed to appear.

Pending before the Court is Plaintiff's Motion for Default Judgment Against Defendant (Doc. 13). For the reasons below, the motion is GRANTED IN PART and judgment is awarded against Defendant in the amount of $11,960.

### Standard of Review

The Court previously entered default against Defendants (Doc. 12). Upon default, a court takes as true all factual allegations in the complaint except those relating to the amount of damages. *Murray v. Lene,* 595 F.3d 868, 871 (8th Cir. 2010); *see* Fed. R. Civ. P. 8(b)(6). The court affords the moving party all reasonable inferences from those facts. *Au Bon Pain Corp. v.*

*Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981). In deciding damages, the court makes factual findings from the movant's allegations in the record. *See Stephenson v. El-Batrawi,* 524 F.3d 907, 916 (8th Cir. 2008).

**Factual Background**

The Court finds the facts to be as follows. Plaintiff J & J Sports Productions, Inc. is a commercial distributor of television programming, including the exhibition of prize-fighting events. Plaintiff enters into sublicensing agreements with commercial entities across the United States, granting the rights to publicly exhibit events to patrons within their respective establishments. Plaintiff paid for, and was granted, the exclusive rights to distribute the "Manny Pacquiao v. Juan Manuel Marquez, IV, Welterweight Fight Program" telecast ("the Broadcast"), which took place on December 8, 2012, in Las Vegas, Nevada. These exclusive rights included all under-card bouts and fight commentary encompassed in the television broadcast of the event. The Broadcast was available to establishments in Missouri only through the payment of licensing fees to Plaintiff, the amount of which depended on the establishment's capacity.

Defendant Main Hookah Lounge, LLC, d/b/a Main Hookah Lounge, is a lounge in Kansas City, Missouri. The lounge seats approximately seventy customers and has one large projection screen and two television screens.

Anticipating that some bars and restaurants in the Kansas City area would illegally intercept the Broadcast without paying the required licensing fees, Plaintiff sent investigators into several bars, including Defendant's, on the night of the Broadcast. At Defendant's establishment, the investigator observed the Broadcast being shown on all three televisions to ten patrons. Defendant required each patron to pay a five dollar cover charge to enter the establishment.

Plaintiff never authorized Defendant to exhibit the Broadcast at their establishment. Given how the Broadcast's technology works, the Broadcast could not have been shown at Defendant's establishment unless someone had taken specific steps to intercept and exhibit the Broadcast.

Plaintiff filed this lawsuit in December 2014. Because Defendant was served but never appeared in this litigation, the Clerk entered default against Defendant on June 5, 2015. Plaintiff then filed the pending Motion for Default Judgment.

## Discussion

Plaintiff moves for default judgment on Counts I, II, and III. Once a Defendant is in default, a court may enter a default judgment against that party. Fed. R. Civ. P. 55(b)(2). A court must make two determinations in considering a motion for default judgment. First, it determines whether the defaulting party is liable for the claims alleged in the complaint. Second, it determines the extent of the damages.

### I. Defendant is liable under § 605(a) and not liable under § 553 for intercepting the Broadcast.

Counts I and II assert that Defendant's alleged misappropriation of the Broadcast violated two federal statutes, 47 U.S.C. § 605(a) and 47 U.S.C. § 553. The first, 47 U.S.C. § 605, prohibits the unauthorized interception and use of "satellite cable programming." 47 U.S.C. § 605(d)(1); *Joe Hand Promotions, Inc. v. Lynch,* 822 F. Supp. 2d 803, 805 (N.D. Ill. 2011). The second, 47 U.S.C. § 553, provides that no unauthorized "person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system." 47 U.S.C. § 553(a)(1). Plaintiff has requested statutory damages pursuant to both Section 553(c)(3)(A)(ii) and Section 605(e)(3)(C)(i)(II) (Doc. 14). Plaintiff cites a single decision of a district court in the Ninth Circuit for the proposition that this Court should award damages

3

pursuant to both statutes. *See Spencer Promotions Inc. v. 5th Quarter Enterprises, Inc.,* No. C 94-0988 CW, 1996 WL 438789 (N.D. Cal. 1996). However, a majority of the circuit courts of appeals, as well as district courts within the Eighth Circuit, interpret Sections 605 and 553 to be mutually exclusive. *Joe Hand Promotions, Inc. v. Ridgway*, No. 6:14-cv-03401-MDH, 2014 WL 7005239, at *2 (W.D. Mo. Dec. 10, 2014). 47 U.S.C. Section 605 would be inapplicable if the delivery were by cable. However, given the default, Plaintiff cannot conduct discovery to determine the mode of transmission. *See J & J Sports Prods., Inc. v. Brazilian Paradise, LLC,* 789 F. Supp. 2d 669, 674 (D.S.C. 2011). Because the two statutory schemes provide relief for alternate means by which the Broadcast might have been received, Plaintiff elected to proceed under 47 U.S.C. § 605 (Doc. 20).[1] *Id.* at 673-74 (acknowledging propriety of plaintiff's election between the two statutory schemes in a default judgment).

To establish a violation of Section 605(a), Plaintiff must prove that: (1) there was a radio communication, (2) intercepted by a person, (3) who divulged or published the contents or substance of the intercepted communication to any person, (4) without authorization of the sender. 47 U.S.C. § 605(a).

Here, the complaint and attached affidavits establish facts supporting a finding that Defendant violated Section 605. Defendant received a form of radio communication, constituting the Broadcast, even though Defendant was not authorized to receive it. Given how the Broadcast technology works, the Court infers that it was intercepted by Defendant. Further, the Broadcast was shown in Defendant's place of business without the authorization of Plaintiff, the sender, to Defendant's customers. Accordingly, Defendant is liable under Count I of the Complaint. Pursuant to Rule 55(b)(2), default judgment is entered against Defendant on Count I.

---

[1] Given the default, Plaintiff could not conduct discovery to determine the mode of transmission and the statute under which to sue. The Court instructed Plaintiff to elect one of the provisions under which to receive damages (Doc. 19).

4

Case 4:14-cv-01075-DGK   Document 21   Filed 10/26/15   Page 4 of 12

## II. Pursuant to Section 605(a), the Court awards damages, fees, and costs in the sum of $11,960.

Section 605 permits the injured party to recover three types of damages and fees. First, the party may elect to recover either: actual damages suffered by him and any profits of the violator, or statutory damages of "a sum of not less than $1,000 or more than $10,000, as the court considers just," for each violation of Section 605(a) ("base damages"). 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II). Second, the court may award additional damages up to $100,000 if the defendant violated the statute willfully and for the purpose of commercial advantage ("enhanced damages"). *Id.* § 605(e)(3)(C)(ii). Third, the court must award the prevailing party reasonable attorneys' fees and costs. *Id.* § 605(e)(3)(B)(iii).

Pursuant to Section 605, Plaintiff seeks $112,960: $10,000 in statutory damages, $100,000 in enhanced damages, $2,500 in attorneys' fees, and $460 in court costs. As explained below, the Court awards damages of $9,000 and fully grants Plaintiff's request for fees and costs for a total award of $11,960.

### a. The Court awards base damages of $2,250, the amount Plaintiff would have paid to lawfully license the Broadcast.

Plaintiff first requests statutory damages of $10,000, the maximum allowed for violations of Section 605. Plaintiff explains that the unauthorized interception, receipt, and broadcast of closed-circuit programming threatens the economic viability of the promotions industry as well as Plaintiff's reputation and goodwill. Plaintiff further explains that violations like this one result in the loss of its legitimate commercial customers who are unable to compete with unauthorized locations that broadcast the programming in an unlicensed manner at little or no cost to their patrons. Plaintiff believes that a large amount of damages would serve as a deterrent.

5

The amount of base damages assessed pursuant to Section 605 lies within the sound discretion of the court. 47 U.S.C. § 605(e)(3)(C)(i)(II); *Joe Hand Promotions, Inc. v. Thompson*, No. 4:11-CV-1740 CAS, 2013 WL 466278, at *3 (E.D. Mo. Feb. 7, 2013) (noting that "[d]amages awarded under § 605 have varied tremendously in [the Eastern District of Missouri]" and collecting cases awarding damages ranging from $3,000 to $150,000). Courts generally use one of two approaches to calculate statutory damages. The first approach is to calculate damages based on the number of customers in the establishment at the time of the unauthorized broadcast. *See, e.g., J & J Sports Prods., Inc. v. Calderon,* No. 09 C 7039, 2010 WL 3420153, at *3 (N.D. Ill. Aug. 26, 2010) (awarding statutory damages based on a final number of patrons multiplied by a baseline of $55 per patron). The second approach is to award an amount based on the rate the provider would have charged the establishment to legally broadcast the program. *See, e.g., Brazilian Paradise,* 789 F. Supp. 2d at 676 ("Some courts base the statutory damages amount on an iteration of the licensing fee the violating establishment should have paid the plaintiff.").

In general, base damages are based on a reasonable estimate of actual damages, "[b]ecause statutory damages are merely an alternative to actual damages." *Joe Hand Promotions, Inc. v. Yakubets,* 3 F. Supp. 3d 261, 274-79 (E.D. Pa. 2014) (reaching this conclusion in the analytically identical context of § 553). *But see, e.g., Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles,* 920 F. Supp. 2d 659, 667 (E.D. Va. 2013) (increasing base damages above the amount of actual damages for deterrence purposes, in a line of reasoning rejected by *Yakubets* because the policy aim of deterrence is furthered by awarding *enhanced* damages).

The issue then is what actual damages Defendant caused Plaintiff. The Court considers two factors in determining Section 605 base damages. First, what it would have cost the

defendants to legally obtain a license to exhibit the event. Based on the occupancy of Defendant's establishment, Defendant should have paid $2,200 to exhibit the Broadcast.

Second, a court considers "any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages." *Yakubets*, 3 F. Supp. 3d at 280. Here, Defendants charged a $5 cover charge per person to enter the establishment on the night of the Broadcast. It is not clear whether this same entry fee is charged on nights without special broadcasts like the one in question. Plaintiff's investigator counted ten patrons in the establishment throughout the night. Though Defendants did not seem to profit much from the illegal exhibition of the Broadcast, the Court finds it just to include these illicit profits—$50—in its calculation of base damages.

The Court thus awards base damages of $2,250.

> **b. Because Defendant's conduct was not particularly egregious, the Court awards enhanced damages of $6,750.**

Next, Plaintiff seeks enhanced damages of $100,000. A court has discretion to grant up to this amount in enhanced damages if it finds the defendant violated Section 605 "willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The fact that Defendant played the Broadcast at its establishment and charged an entry fee on the night of the Broadcast demonstrates that Defendant violated Section 605 "for purposes of direct or indirect commercial advantage." *Id.*; *see J & J Sports Prods., Inc. v. Beck*, No. L-13-57, 2013 WL 5592333, at *3 (S.D. Tex. Oct. 9, 2013) ("[I]t is obvious that commercial establishments show sports programs to draw business, not out of charity."). The issue then is whether Defendant's violation was willful.

Willfulness in this context is "disregard for the governing statute and an indifference to its requirements." *Comcast of Ill. X v. Multi-Vision Elecs., Inc.*, 491 F.3d 938, 947 (8th Cir.

7

2007) (internal quotation marks omitted). In determining willfulness, "courts typically consider whether there have been repeated violations over an extended period of time, whether the defendant advertised the event or charged a cover charge, the amount of the defendant's gain, and other similar factors." *J & J Sports Prods., Inc. v. Brewster "2" Café, LLC*, No. 4:11-cv-00690-SWW, 2014 WL 4956501, at *5 (E.D. Ark. Oct. 2, 2014) (citing *Joe Hand Prods., Inc. v. Feil*, No. 12-CV-1603, 2013 WL 2936389, at *2 (D. Minn. June 14, 2013)). Generally speaking, courts award "anywhere from three to six times the statutory damages award for enhanced damages." *Feil*, 2013 WL 2936389, at *2 (quoting *J & J Sports Prods., Inc. v. Ribeiro*, 562 F. Supp. 2d 498, 502 (S.D.N.Y. 2008)).

Here, there is evidence that Defendant willfully violated Section 605. Defendant displayed the Broadcast on all three of the televisions in its establishment. An entry fee of $5 per person was charged at the door on the night in question. On the other hand, Defendant had only ten patrons that evening and the nominal profit from the entry fee has been accounted for in the base damages award. There is no evidence that Defendant promoted the fight or is a repeat offender. On balance, the Court finds that Defendants did not violate Section 605 in a particularly egregious manner.

Accordingly, the Court trebles the amount of base damages in order to adequately and justly compensate Plaintiff for lost profits, and deter Defendant from future violations. Multiplying base damages by a factor of three, the Court awards Plaintiff $6,750 in enhanced damages.

### c. The Court finds Plaintiff seeks reasonable attorneys' fees and costs.

Plaintiff seeks $2,500 in attorneys' fees and $460 in court costs. The Federal Communications Act states that the district court "*shall* direct the recovery of full costs,

including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii) (emphasis added). Because Plaintiff is a prevailing party, the Court must hold Defendant liable for Plaintiff's reasonable attorneys' fees and costs.

Plaintiff requests attorneys' fees in the amount of $2,500, or ten hours of legal work at $250 per hour. Courts have found a wide range of attorneys' fees to be reasonable in cases like this. *See, e.g., Joe Hand Promotions, Inc. v. Wilson*, No. 4:14-CV-467-DGK, at 9 (W.D. Mo. Jan. 5, 2015) (finding an award of $1,500 in attorneys' fees reasonable); *Joe Hand Promotions, Inc. v. Zani*, No. 11 C 4319, 2014 WL 958716, at *2-4 (N.D. Ill. Mar. 11, 2014) (reducing attorneys' fees from $15,645 to $6,460 where the documentation of the attorneys' hours was inadequate, the case did not result in a high degree of success, the client recovered only a fraction of the amount requested, the fees were higher than the damages awarded to the client, and the claim was straightforward in nature); *Zuffa, LLC v. Parker*, No. 11-3451, 2012 WL 1466773, at *4-*5 (D. Minn. Apr. 27, 2012) (finding an award of $2,738 in attorneys' fees to be reasonable); *Joe Hand Promotions, Inc. v. Cat's Bar, Inc.*, No. 08-4049, 2009 WL 700125, at *3 (C.D. Ill. Mar. 16, 2009) (finding $831.25 to be a reasonable request). Plaintiff has not clearly documented the hourly work of its attorney, the damages awarded are only a fraction of the amount requested, and the claim is straightforward in nature. On the other hand, the fee request is similar to the amounts awarded in similar cases and the requested fees are lower than the amount of damages awarded to Plaintiff. Accordingly, the Court finds the Plaintiff's request is reasonable and awards $2,500 in attorneys' fees and $460 in costs.

To summarize, the Court awards $2,250 in base damages, $6,750 in enhanced damages, $2,500 in attorneys' fees, and $460 in costs, for a total of $11,960.

### III. Because recovery for conversion is barred, Plaintiff's conversion claim is denied as moot.

Under Missouri law, "conversion occurs where there is an unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." *Churchill in Crestwood, LLC v. Schwartz,* No. 09-0100-CV-W-SOW, 2011 WL 7109212, at *13 (W.D. Mo. Jan. 27, 2011) (quoting *Dean Mach. Co. v. Union Bank,* 106 S.W.3d 510, 522 (Mo. Ct. App. 2003)). Three elements must be established to prove conversion: (1) plaintiff was the owner of the property or entitled to its possession; (2) defendant took possession of the property with the intent to exercise some control over it; and (3) defendant thereby deprived plaintiff of the right to possession. *Id.* (citing *JEP Enters. Inc. v. Wehrenberg, Inc.,* 42 S.W.3d 773, 776 (Mo. Ct. App. 2001)). In conversion cases, Missouri courts have awarded plaintiffs damages in the amount the plaintiff would have received had defendants obtained the program lawfully through paying the commercial licensing fee. *J & J Sports Prods., Inc. v. Las Palmas, Inc.,* No. 4:13CV2254HEA, 2015 WL 1650895, at *4 (E.D. Mo. April 14, 2015).

Assuming without deciding that Defendant is liable for conversion, Plaintiff cannot recover damages for that claim because doing so would be an impermissible double recovery. In pay-per-view piracy cases, there is often a question whether the plaintiff can recover under Section 605 and for conversion. This Court agrees with those courts holding that "recovery under [either Section 553 or 605] and a state law conversion claim would result in an impermissible double recovery for the same loss." *Brewster "2" Café, LLC*, 2014 WL 4956501, at *7 (finding that a recovery of the amount it would have cost defendants to obtain a license from plaintiffs for programming under Section 553 rendered the state law claim for conversion moot); *accord, e.g., J & J Sports Prods., Inc. v. Castellon*, No. 15-cv-01941-WHO, 2015 WL 6089898, at *3 (N.D. Cal. Oct. 16, 2015) (finding that statutory damages awarded sufficiently

10

compensated plaintiff and refusing to award additional damages on a state law claim of conversion); *Joe Hand Promotions v. Shepard*, No. 4:12CV1728 SNLJ, 2015 WL 1976342, at *8 (E.D. Mo. April 30, 2015) (finding that a state law conversion claim and a claim under Section 605 for the same act are duplicative); *Joe Hand Promotions, Inc. v. Peterson,* No. 8:12CV241, 2014 WL 824119, at *5 (D. Neb. Mar. 3, 2014) ("If Joe Hand recovers under [Section 605 or 553] its state law claim for conversion is not viable."); *J & J Sports Prods., Inc. v. Melgar*, Civ. No. PJM 11-3339, 2012 WL 1852270, at *2 (D. Md. May 17, 2012) (refusing to consider damages under Section 553 or a conversion claim and awarding damages under Section 605 only); *J & J Sports Prods., Inc. v. J.R.'Z Neighborhood Sports Grille, Inc.*, C.A. No. 2:09-03141-DCN-RSC, 2010 WL 1838432, at *2 (D.S.C. Apr. 5, 2010) (refusing to award damages for the tort of conversion where the award would not exceed the amount awarded under Section 605 and would result in a double recovery). *But see Las Palmas, Inc.,* 2015 WL 1650895, at *4 (awarding damages for a violation of Section 605 and for conversion).

Under Section 605 above, Plaintiff receives the amount of money it would have received had Defendant obtained the program lawfully through paying the commercial licensing fee—$2,200—plus the amount that Defendant profited from the illicit exhibition. This Court also awards enhanced damages of three times the amount Plaintiff would have made had the Broadcast been lawfully purchased by Defendant. Plaintiff has been made whole with the award of base damages, attorneys' fees, and costs under Section 605. The award of enhanced damages under Section 605 further compensates Plaintiff for lost profits and serves as a deterrent. Because conversion claims are also compensatory, a damages award under the state law conversion claim would be duplicative of the Section 605 award. After a review of the relevant case law, the Court finds that allowing damages for conversion in the instant case would result in

11

a double recovery.  Thus, recovery is barred.

## Conclusion

For the foregoing reasons, Plaintiff's motion is GRANTED IN PART. The Court enters a final judgment against Defendant in the amount of $11,960.  Plaintiff is entitled to post-judgment interest in the amount set forth by 28 U.S.C. § 1961(a).[2]

**IT IS SO ORDERED.**

Date: October 26, 2015                     /s/ Greg Kays
                                           GREG KAYS, CHIEF JUDGE
                                           UNITED STATES DISTRICT COURT

---

[2] Plaintiff requests that post-judgment interest accrue at the rate of nine percent per annum (Doc. 13 at 3).  Plaintiff does not cite a legal basis for this interest rate.  Under 28 U.S.C. § 1961(a), interest shall be allowed on any money judgment in a civil case recovered in a district court and "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding…the date of the judgment."